IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CINDY CORDERO CARMONA, et al<br><br>Plaintiffs<br>v.<br><br>SOUTH AMERICAN RESTAURANTS Corp., et al<br><br>Defendants | **Civil No.  07-1314 (SEC)** |

OPINION AND ORDER

Pending before the Court is Defendant, South American Restaurants Corp.'s (SARC) Motion for Summary Judgment (Docket # 29). Plaintiff has not replied to the aforementioned motion. As such, it shall be deemed unopposed.  Upon consideration of SARC's filing, the evidence in the record, and the applicable law, Defendant's Motion for Summary Judgment is **GRANTED**.

**Standard of Review**

The Court may grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248(1986); Ramírez Rodríguez v. Boehringer Ingelheim, 425 F.3d 67, 77 (1st Cir. 2005). In reaching such a determination, the Court may not weigh the evidence. Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994).  At this stage, the court examines the record in the "light most favorable to the nonmovant," and indulges all "reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). Summary judgment is only available in the absence of a genuine issue as to the material facts of the case. Santoni v. Potter, 369 F.3d 594, 598 (1st Cir.2004).

**Civil No. 07-1314(SEC)**

Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact in issue that is both genuine and material. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (citations omitted). "A  factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 116 (1st Cir. 2005)(quoting Garside, 895 F.2d at 48 (1st Cir. 1990)).

In order to defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. See Hadfield v. McDonough, 407 F.3d 11, 15 (1st Cir. 2005) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact. Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997). Once the party moving for summary judgment has established an absence of material facts in dispute, and that he or she is entitled to judgment as a matter of law, the 'party opposing summary judgment must present definite, competent evidence to rebut the motion.' Méndez-Laboy v. Abbot Lab., 424 F.3d 35, 37 (1st Cir. 2005) (quoting from Maldonado-Denis v. Castillo Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). "The non-movant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue. . . . Failure to do so allows the summary judgment engine to operate at full throttle." Id.; see also Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); Medina-Muñoz, 896 F.2d at 8, quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a fact finder must resolve.").

**Civil No. 07-1314(SEC)**

If the opposing party "does not respond, summary judgment should, if appropriate, be entered." FED. R. CIV. P. 56(e)(2). These rules "are meant to ease the district court's operose task and to prevent parties from unfairly shifting the burdens of litigation to the court." Cabán-Hernández v. Phillip Morris USA, Inc., 486 F.3d 1, 8(1st Cir. 2007). When the parties ignore the Local Rule, they do so at their peril. See Ruiz-Rivera v. Riley, 209 F. 3d 24, 28 (1st Cir. 2000).

In the instant case, Plaintiffs failed to file an opposition to SARC's motion for summary judgment. As a result, and per FED. R. CIV. P. 56(e)(2), Plaintiff's motion is deemed unopposed. Thus, the Court will deem as admitted those facts which are supported by the record. This solution is consistent with Local Rule 56, and First Circuit precedent. See Philip Morris, 486 F.3d at 7-8.

**Factual and Procedural Background**

On July 20, 2003, Ruth Carmona ("Carmona") allegedly went to the "drive thru" window of Church's Chicken ("Church's"), a fast food chain restaurant at Plaza Atlántico in Arecibo, Puerto Rico, and bought a meal for her granddaughter Stephanie Torrado Cordero ("Torrado"). Docket #29, ¶ 1. The meal allegedly included a side order of mashed potatoes. Id. Torrado allegedly complained to Carmona that the mashed potatoes were cold. Id. Carmona then avers that she went back to Church's, complained about the mashed potatoes and they exchanged them for a new side order of mashed potatoes. Id. Plaintiffs claim that second serving of mashed potatoes tasted like "detergent," and that Carmona complained, again and Church's reimbursed their money. Id.

Sometime afterward Plaintiffs allege to have eaten the contaminated mashed potatoes, Torrado started to feel ill and developed stomach pain, nausea, diarrhea, and headaches. Id. With these symptoms, Torrado was first treated at the Emergency Room of the Arecibo Medical Center ("AMC Emergency Room"). Later on, Torrado was hospitalized three times, once in Puerto Rico for a week, and twice in Florida for one week and two weeks, respectively. Id. at

**Civil No. 07-1314(SEC)**

¶ 2. Accordingly, Plaintiffs have brought the present lawsuit for damages under Articles 1802 and 1802 of the Civil Code of Puerto Rico P.R. Laws Ann. tit 31, sec. 5141 & 5142.

At this juncture, this Court should clarify that the above narrative is constructed from the facts alleged by Plaintiffs in the complaint and not facts based on evidence in accordance with Rule 56. More importantly, as Defendants' motion for summary judgment is unopposed, no evidence has been proffered by Plaintiffs to support the allegations made in the complaint, or refute the facts proffered by SARC. Having qualified the factual background, this Court will proceed to analyze the facts as presented in the motion for summary judgment.

On, or about, August 22, 2003, Carmona went to Church and spoke with Church's facility manager, Miriam J. Nogueras ("Nogueras"). Id. at ¶ 8. Carmona claimed to Nogueras that about a week before, Torrado got sick and was hospitalized after she ate Church's mashed potatoes, when in fact the alleged event would have had to have occurred almost a month earlier. Id. at ¶ 9. During her visit to the Church's facility, Carmona sought reimbursement of several invoices. She also claimed that she was unable to report the incident earlier due to her granddaughter's admission to the hospital. Id. at ¶ 11. Five days later, Carmona handed in an incident report at Church's. Id. at ¶ 12. In the aforementioned report, Carmona stated that the incident was on July 20, 2003. Id. at ¶ 12.

Prior to Carmona's incident report, Church's and SARC possesed no formal record that a complaint of this kind or a similar one, was reported, or made at the Church's facility or SARC's offices during the period of July – August 2003. Id. at ¶¶ 13 & 15.

*Church's process of making the mashed potatoes*

Church's prepares mashed potatoes at each of its restaurants. Id. at ¶ 16. Once ready, they are placed in covered stainless steel bowls and stored in warmers. Id. The kitchen sink is located far away from the area where the food is prepared to prevent accidental spills of

**Civil No. 07-1314(SEC)**

detergent into the food. Id. In addition, the employees that prepared the food are not allowed to wash any dish or clean the dining room. Id.

*Torrado's Medical Treatment*

On July 20, 2003 at 11:20 p.m., Torrado arrived at the AMC Emergency Room accompanied by Carmona, where she complained about having a headache and abdominal pain. Id. at ¶ 17. They told AMC Emergency room doctors that the child was suffering the aforementioned pain since that afternoon, but Carmona made no reference about Torrado having consumed any "contaminated" or "spoiled" mashed potatoes that day. Id. at ¶ 18. After arriving, at 11:35 p.m. the treating physician ordered a completed blood count ("CBC") analysis, a urinalysis, and a rectal suppository. Subsequently, the same physician ordered her transfer to the Arecibo Medical Hospital. Id. at ¶ 19. Finally, he diagnosed Torrado with gastritis, viral syndrome, and abdominal pain. He made no remark or notation attributing Torrado's condition to consumption of any food. Id. at ¶ 20. On July 21, 2003, at 12:45 a.m. Subsequently, Torrado was discharged with a referral to Arecibo Regional Hospital's Emergency Room (ARH Emergency Room). Id. at ¶ 21.

On July 21, 2003, at 1:50 a.m., Torrado arrived at the ARH Emergency Room with strong abdominal pain. Id. at ¶ 21. Neither the emergency room nurse's notes, nor the physician's notes, contain any remark relating Torrado's illness to her consumption of specific food. Id. at ¶ 23. A physician's progress note written on July 21, 2003, states that (1)Torrado had been in the ARH Emergency Room for 24 hour; (2) she tolerated the diet well; (3) she had a soft abdomen, normal peristalsis and no abdominal pain; (4) the abdominal pelvis sonogram was negative; and (5) the plan was to discharge her home with laboratory orders for a CBC with differential and a follow up appointment with a physician on July 25, 2003. Id. at ¶ 27.

On July 22, 2003, Torrado was taken again to the ARH Emergency Room because she was complaining of abdominal pain. By July 31, 2003, Torrado had returned to Florida, where

**Civil No. 07-1314(SEC)**

she continued to suffer from similar symptoms to those shown in PR. Id. at ¶ 36. However, in Florida her medical record shows that she suffered from similar problems in 2003. Id. at ¶ 36. Florida doctors also noted that Torrado's mother and aunt have a history of stomach problems. Id. at ¶ 57. None of Torrado's treating physicians noted, or suggested, that her gastrointestinal problems were caused by eating Church's mashed potatoes, or any other type of food. Id. at ¶¶ 54, 66, 67,.

### Applicable Law and Analysis

Plaintiffs bring suit under diversity jurisdiction pursuant to Article 1802 of the Civil Code of Puerto Rico. 31 Laws of P.R. Ann. § 5141. Plaintiffs allege that Torrado became ill after eating mashed potatoes at Church's. Defendants argue that Plaintiffs have no evidence to (1) prove the existence of a defective food product prepared by them and (2) to show that the proximate cause of Torrado's illness was her consumption of SARC's food product.

Article 1802 provides that "any person or entity who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done...." A plaintiff who seeks relief under this article must establish "(1) a negligent act or omission, (2) damages, and (3) a causal relationship between them." Rivera Santiago v. U.S., No. 08-1266, 2009 WL 702235 at *2 (D.P.R. March 11, 2009); see also Soc. Gananciales v. Padin Co., Inc., 117 D.P.R. 94, 17 P.R. Offic. Trans. 111, (1986)(stating that Article 1802 requires, ". . .1) the act or omission violating the contract or resulting in the illegal noncontractual act 2) the illegal nature of the same 3) the fault of the agent 4) the occurrence of an injury and 5) the cause and effect relation between the act or omission and the damage."). Furthermore, restaurants and other places of business have a special obligation to ensure that their products and premises are safe. Padin Co., id.

Accordingly, a plaintiff must provide some proof, either circumstantial or direct, that the defendant establishment has acted negligently. Once the plaintiff established Defendant's

**Civil No. 07-1314(SEC)**

negligent act or omission, it must "demonstrate that the defendant's negligence was the proximate cause of her injuries." Vázquez-Filippetti, 504 F.3d 43, 49 (1st Cir. 2007). The Puerto Rico Supreme Court has stated that a Plaintiff must prove through a defendant's negligence through evidence, and that liability under Article 1802 is not presumed by the mere fact that the plaintiff suffers from some injury or affliction. Plaintiff must prove, ". . .through a preponderance of evidence, that the harm caused was most likely caused by the negligence charged by plaintiff." Crespo v. Hernández, 121 P.R. Dec. 639, 21 P.R. Offic. Trans. 637, 647(1988).  Therefore, "[a] defendant's actions may only be the proximate cause of a plaintiff's injuries if they in fact caused the injuries and the defendant could have reasonably foreseen that the injuries (or related harms) would result from his actions." Vázquez-Filippetti, 504 F.3d at 49 (citations omitted). Regarding the foreseeable element of a tort claim, a Defendant "will be liable only for those reasonably foreseeable consequences to its conduct." Belfort v. Corporacion Hogar San Agustin, No. 07-1240,  2008 WL 5276192 at *5 (D.P.R. Dec. 18, 2008); see also Woods-Leber v. Hyatt Hotels of P.R., 124 F.3d 47, 51 (1st Cir.1997) (stating that foreseeability is a component of breach of duty and proximate cause).

This Court does not refute any assertion that given the presence of evidence of contaminated food in a restaurant, there could be a linkage to Torrado's condition. Nevertheless, this Court agrees with SARC that Plaintiffs have failed to proffer any evidence that Torrado consumed contaminated mashed potatoes at Church's on the relevant date. There are allegations that Torrado was served a product that tasted like detergent, but these are not substantiated by a product sample, or even sworn declarations from the Plaintiffs as to the veracity of their claims. On the contrary, SARC's business records show no record of any incident, or other similar cases of contamination, on or around the date the complaint alleges that Torrado was served contaminated food at SARC's restaurant. Moreover, Plaintiffs have not alleged that

**Civil No. 07-1314(SEC)**

others suffered from similar contamination. Accordingly, upon the facts properly presented to this Court, it is impossible to infer negligence on the part of Defendants.

Furthermore, even if negligence could be found on the part of Defendants, this Court is unable to infer the possibility of finding a causal nexus between their allegations against Church's and Torrado's illness. Torrado was undoubtedly ill. Nevertheless, nothing in the record points to Defendants' product as the cause of her afflictions. Given that the medical record demonstrates that Torrado's condition was serious, it is beyond this Court's understanding why Plaintiffs would have not informed Torrado's treating physicians that they believed her suffering was caused by contaminated mashed potatoes.

There might be answers to these questions, but Plaintiffs' counsel has demonstrated a complete lack of interest in perusing the present action. Since the motion for summary judgment is unopposed, this Court must accept Defendants' well pleaded facts. Therefore, in light of the above, this Court has no other option than to **GRANT** SARC's motion for summary judgment.

**Conclusion**

For the reasons stated above, Defendant's motion for summary judgment is **GRANTED**. Plaintiffs' claims against Defendants are hereby **DISMISSED** with prejudice. Judgement shall be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of March, 2009.

*S/Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge